882 P.2d 475

**Ivan DUNNICK and Susan Dunnick, husband and wife, Plaintiffs–Appellants,**

v.

**Rob ELDER, individually and d.b.a. Cricket's Restaurant & Oyster Bar, Cadillac Jakes, Inc., an Idaho corporation, d.b.a. Cricket's Restaurant & Oyster Bar, Does I–X, inclusive, Defendants–Respondents.**

No. 21026.

Court of Appeals of Idaho.

Oct. 12, 1994.

---

Hugh G. Jacobs, Coeur d'Alene, for appellants.

Paine, Hamblen, Coffin, Brooke & Miller, Coeur d'Alene, for respondents. Ausey H. Robnett, III argued.

PERRY, Judge.

In this case we are asked to determine whether summary judgment was properly granted in an action between two commercial tenants in the same building. We affirm the district court's judgment, holding that the appellants' claim of misrepresentation lacked evidence of causation of damage, and that no evidence of any "wrongful act" was presented which might support another cause of action.

## FACTS AND PROCEDURE

Ivan and Susan Dunnick were tenants in the Old City Hall building in Coeur d'Alene. The Dunnicks leased space for an apparel shop and a beauty salon in the building. The respondent, Rob Elder, was also a tenant and president of Cadillac Jake's, Inc., which does business in the building as Cricket's Restaurant & Oyster Bar. The Old City Hall building is situated at the corner of Fifth Street and Sherman Avenue. In 1991, Elder began planning to remodel Cricket's. The proposed remodeling required that a side entrance to the building (the Fifth Street entrance) be closed. Elder sought and obtained permission from the landlord for his remodeling plan and circulated a memo to the other tenants, which stated:

> We are excited to announce the expantion [sic] to Cricket's Restaurant & Oyster Bar. We will be remodeling the Oyster Bar to attract an older crowd and we will be expanding the Restaurant and kitchen areas to meet our growing needs, thus ensuring better food and service quality to our customers.
>
> In order to accomplish this, we need to close the Fifth Street entrance to allow for the room needed to perform the expansion. If this meets with your approval, please sign below.

Ivan Dunnick signed the memo.

As part of the remodeling, Elder also closed the entrance to Cricket's from the

interior common area of the building (the interior entrance) and constructed an entrance which opened directly onto Sherman Avenue. The closing of the interior entrance into Cricket's reduced foot traffic flowing through the building's main entrance and past the Dunnicks' shops. The closure had a strong negative effect on the Dunnicks' businesses. The Dunnicks brought suit alleging interference with quiet enjoyment of their premises. Their first cause of action was based on a provision in Elder's lease which stated:

> Tenant agrees not to do or allow to be done anything which might be injurious to the Premises or the balance of City Hall or which might cause unreasonable noise, odors, annoyance or nuisance which would be objectionable to other tenants in City Hall.

The Dunnicks' second cause of action alleged that Elder had misrepresented the full extent of the proposed remodeling in order to gain the Dunnicks' consent to the Fifth Street entrance closure.

Elder sought, and was granted, a summary judgment dismissing the case. As to the Dunnicks' first cause of action, regarding interference with the Dunnicks' lease, the district court found that although causes of action might be maintained against third parties for interference with a lease, such causes of action required some wrongful act by the third party. The district court determined that there was no evidence of any wrongful act committed by Elder and therefore summary judgment was appropriate. As to the Dunnicks' second cause of action, alleging misrepresentation, the district court determined that there was no evidence presented which connected the alleged misrepresentations regarding the Fifth Street entrance closure with the alleged harm.

The Dunnicks appeal, claiming that genuine issues of material fact existed with respect to consent and the damage caused by the alleged misrepresentation.

1. Such an absence of evidence may be established either by an affirmative showing with the moving party's own evidence or by a review of all the nonmoving party's evidence and the con-

## ANALYSIS

■■■ We first note that summary judgment under I.R.C.P. 56(c) is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment. *Edwards v. Conchemco, Inc.,* 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct.App. 1986). When assessing the motion for summary judgment, all controverted facts are to be liberally construed in favor of the nonmoving party. Furthermore, the trial court must draw all reasonable inferences in favor of the party resisting the motion. *G & M Farms v. Funk Irrigation Co.,* 119 Idaho 514, 517, 808 P.2d 851, 854 (1991).

■■■ The party moving for summary judgment initially carries the burden to establish there is no "genuine issue of material fact" and that he or she is entitled to judgment as a matter of law. *Eliopulos v. Knox,* 123 Idaho 400, 404, 848 P.2d 984, 988 (Ct. App.1992). When the party moving for summary judgment will not carry the burden of production or proof at trial, the "genuine issue of material fact" burden may be met by establishing the absence of evidence on an element that the nonmoving party will be required to prove at trial. Once such an absence of evidence has been established,[1] the burden then shifts to the party opposing the motion to establish, through further depositions, discovery responses or affidavits, that there is indeed a genuine issue for trial, or to offer a valid justification for the failure to do so under I.R.C.P. 56(f). *Sanders v. Kuna Joint School District,* 125 Idaho 872, 876 P.2d 154 (Ct.App.1994).

The United States Supreme Court, in interpreting Federal Rule of Civil Procedure 56(c), which is identical in all relevant aspects to I.R.C.P. 56(c), stated:

> In our view, the plain language of Rule 56(c) mandates the entry of summary

tention that such proof of an element is lacking. *See* Martin B. Louis, *Federal Summary Judgment Doctrine: A Critical Analysis,* 83 Yale L.J. 745, 750 (1974).

judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. "[The] standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)...."

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (citations omitted).

The language and reasoning of *Celotex* has been adopted by the appellate courts of Idaho. *See, e.g., G & M Farms v. Funk Irrigation Co.,* 119 Idaho 514, 808 P.2d 851 (1991); *Barab v. Plumleigh,* 123 Idaho 890, 892, 853 P.2d 635, 637 (Ct.App.1993); *Podolan v. Idaho Legal Aid Services, Inc.,* 123 Idaho 937, 941, 854 P.2d 280, 284 (Ct.App.1993); *Ryan v. Beisner,* 123 Idaho 42, 44–45, 844 P.2d 24, 26–27 (Ct.App.1992).

Count I of the Dunnicks' complaint does not clearly state what cause of action is being pursued. Count I does, however, frequently use the language "interference with the quiet enjoyment of leased premises." In the complaint, the Dunnicks apparently use this language in its literal sense, claiming an interference by the other tenant, Elder, with the use of the property, as opposed to an alleged breach of the landlord's implied covenant of quiet enjoyment. The implied covenant of quiet enjoyment is essentially a warranty that a tenant will not be disturbed in its possession by another person holding superior legal right to possession. ROGER A. CUNNINGHAM ET AL., THE LAW OF PROPERTY § 6.30 (1984); 20 AM.JUR.2D. *Covenant, Conditions, and Restrictions* § 97 (1965). On appeal, the Dunnicks assert a "wrongful interference with the leased premises." For the purposes of this appeal, we will treat the allegation as a wrongful interference with the use and enjoyment of leased premises. We will discuss each issue as it is presented in the Dunnicks' appeal.

## A. CONSENT

■ The first issue on appeal raised by the Dunnicks is whether there was a genuine issue of material fact concerning their consent to the Fifth Street entrance closure. The district court found that:

> It is unclear as to the reason why Mr. Elder sought and obtained approval for the closing of the Fifth Street Entrance from the other tenants. There is no evidence in the record that Mr. Elder was required to obtain the approval of the other tenants.

The Dunnicks argue, however, that they are entitled to the reasonable inference in the context of a summary judgment, per *G & M Farms,* that consent was required based on the following facts: (1) the memorandum seeking the other tenants' approval was circulated; (2) the clause in Elder's lease prohibited certain objectionable actions; (3) Elder's lease required him to seek the landlord's consent for the remodeling of Cricket's; and (4) if the Dunnicks had known the true nature of the remodeling, they would not have consented to the Fifth Street closure.

■ The concept of "consent," without further context, is not itself a cause of action. Consent is only relevant insofar as it relates to some other right or obligation, i.e. consent (waiver) of a contractual obligation or consent to submit to an act which might otherwise be prohibited or create liability. In this particular case, the fact that Elder circulated a gratuitous memorandum requesting an indication from the other tenants of approval for the Fifth Street entrance closure does not establish that there was a contractual duty to garner "consent" from those tenants. It is undisputed that no contractual relation existed between Elder and the Dunnicks. Nor can the circulation of the memorandum be taken to imply that the landlord in this case required Elder to gain each tenant's consent before beginning remodeling, which, though

arguably a possibility, is not a logical inference. After oral argument on the motion, the district court gave the Dunnicks an extention of time to file additional affidavits or other proof in the matter. No affidavit of the landlord was ever filed. The supplemental evidence presented failed to satisfy the required burden placed upon the Dunnicks.

The district court concluded that no evidence was presented establishing that Elder was obligated to obtain consent from the other tenants. Our review of the record supports the district court's conclusion. Similarly, we believe that the existence of such a requirement is not a logical inference from the facts established below. Accordingly, summary judgment was proper in this regard.

### B. MISREPRESENTATION

■■■ The Dunnicks' second issue on appeal is whether the district court properly granted summary judgment when it determined there was no causal connection between the alleged misrepresentation and the actual damage suffered. The elements of a cause of action for fraud, also referred to as intentional misrepresentation, are well established in Idaho. A plaintiff must prove: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that the representation should be acted upon by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on the supposed truth of the representation;[2] (8) his right to rely thereon; and (9) his consequent and proximate injury. *Mitchell v. Siqueiros,* 99 Idaho 396, 401, 582 P.2d 1074, 1079 (1978).

The district court assumed, without actually deciding, that elements (1) through (8) were present in this case. The district court then determined that element (9) was determinative, ruling:

In the instant case, the false representations induced Mr. Dunnick to consent to the closure of the Fifth Street entrance. There was, in fact, a closure of the Fifth Street entrance. The injury to the Dunnicks, however, consisted of a decrease in pedestrian foot traffic past their shops when the interior entrance to Cricket's was closed. There is no evidence in the record which indicates that there was any relationship between the two closures.... Therefore, summary judgment must be granted to the Defendants on Count Two.

We agree with the district court's conclusion. Although the closure of the two entrances coincided chronologically, there is no evidence that the two were related causally. Assuming that the Dunnicks had refused to consent to the Fifth Street entrance closure, and thereby prevented it, there is no indication in the record that Elder would have abandoned his plan to close Cricket's interior entrance. The Dunnicks argue that it is reasonable to infer from the facts of this case that "without the representation to gain consent the interior closure would not have occurred." This, however, is speculation which does not rise to the level of logical inference. The lack of proof of a causal relation between the alleged misrepresentation and the harm caused by the closure of the interior entrance warranted the entry of summary judgment in this case.

### C. ELDER'S INTERFERENCE WITH THE DUNNICKS' LEASEHOLD

■■■ Dunnicks next argue on appeal that the summary judgment was improper because a genuine issue of material fact had been shown regarding wrongful interference with the Dunnicks' leasehold. The district court found that:

The problem in the instant case is that it is unclear upon which theory the Plaintiffs are basing their claim. While tenants may

---

2. This element is sometimes stated as the hearer's "reliance on the truth." *See Witt v. Jones,* 111 Idaho 165, 168, 722 P.2d 474, 477 (1986); *Faw v. Greenwood,* 101 Idaho 387, 389, 613 P.2d 1338, 1340 (1980). We have restated the element here to avoid confusion. It is not "the truth" in the general sense which must be relied upon. Obviously, the hearer has no knowledge of "the truth." Instead, it is the supposed truth of the representation made by the speaker which must be relied upon. *See Mitchell v. Siqueiros,* 99 Idaho 396, 401, 582 P.2d 1074, 1079 (1978) (using the language "his reliance on its truth").

have a right of action against a third person who interferes with or disturbs the use and enjoyment of their leasehold, there must be some basis for the claim of interference or disturbance. In other words, there must be a focus upon the alleged "wrongful act" of the Defendants which resulted in interference with the Plaintiffs' use and enjoyment of the leasehold.

Again, we agree with the district court's conclusion. In order for a cause of action for wrongful interference with a leasehold to be viable, there must be at least some allegation of a wrongful act. In this case, as the district court properly noted, there was no trespass as the Dunnicks did not claim any unlawful entry onto their premises. Similarly, the actions of Elder cannot be said to constitute a nuisance. A nuisance,

has variously been defined as conduct that is either unreasonable or unlawful and causes annoyance, inconvenience, discomfort, or damage to others, that which unlawfully annoys or does damage to another, anything wrongfully done or permitted which injures or annoys another in the enjoyment of his legal rights, anything that works injury, harm, or prejudice to an individual or the public, or which works hurt, inconvenience, or damage to another, or which works or causes injury, damage, hurt, inconvenience, annoyance, or discomfort to one in the legitimate enjoyment of his reasonable rights of person or property.

58 AM.JUR.2D *Nuisances* § 1 (1989) (footnotes omitted).

None of these definitions are applicable here, where one party, through wholly reasonable and legal conduct, changes one aspect of a business which had previously supplied a gratuitous benefit to another. The Dunnicks' claim seems to assert a violation of a duty of economic lateral support, a tort which does not exist. The Dunnicks urge this Court to recognize "interference with a leasehold" as a separate tort, without the requirement that the cause of action be based on an underlying tortious act. This new tort would apparently allow a cause of action to be maintained for any "unreasonable" act that "interferes" with any aspect of

a lease. Based on the facts of this case, we decline to recognize such a tort. An action for wrongful interference with a leasehold must be based on some underlying wrongful conduct. A "wrongful act" is "any act which in the ordinary course will infringe upon the rights of another to his damage ..." BLACK'S LAW DICTIONARY 1612 (6th ed. 1990). Summary judgment was properly granted because there was no proof presented that Elder had committed any wrongful act.

## D. DAMAGES

Because we have decided that the summary judgment was properly granted on other grounds, we need not discuss the Dunnicks' fourth issue on appeal relating to damages.

### ATTORNEY FEES

Elder seeks attorney fees on appeal pursuant to I.C. § 12–121. This section, as limited by I.R.C.P. 54(e)(1), allows for an award of attorney fees when an action has been "brought, pursued or defended frivolously, unreasonably or without foundation." I.R.C.P. 54(e)(1). This section and rule are a proper basis for awarding fees on appeal. *Troche v. Gier,* 118 Idaho 740, 800 P.2d 136 (Ct.App.1990). However, we conclude that the appeal in this case was not brought unreasonably and without foundation.

### CONCLUSION

The district court did not err in granting the summary judgment in this case. There was no evidence presented establishing that the other tenants' consent was required prior to the modifications made by Elder. The Dunnicks' claim of misrepresentation was properly dismissed because there was no evidence linking the closure that actually caused the harm, i.e. the interior entrance to Cricket's, and the closure procured by the alleged misrepresentation, i.e. the Fifth Street en-

trance. As to the Dunnicks' claim for wrongful interference with a leasehold, there was no evidence presented that established a wrongful act had been committed by Elder.

Costs, but not attorney fees, are awarded to respondents on appeal.

WALTERS, C.J., and LANSING, J., concur.