**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 36856**

| | | |
|---|---|---|
| **TODD ALLAN BUTTERS,** | ) | **2010 Opinion No. 67** |
| | ) | |
| **Plaintiff-Appellant,** | ) | **Filed: September 30, 2010** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **PHILLIP VALDEZ, DANIEL PRADO,** | ) | |
| **JOEL VANCE YOUNG, FERMIN** | ) | |
| **VILLIARREAL, SHANE JEPSEN, BRENT** | ) | |
| **ARCHIBALD, DANIEL CHANEY, BRIAN** | ) | |
| **DOSER, JUSTIN ACCOSTA, SARA FINK,** | ) | |
| **FLEMMING GREEN, BRIAN** | ) | |
| **TITSWORTH, C/O McCALL, JOHN and** | ) | |
| **JANE DOES I-VI, and their successors in** | ) | |
| **office, sued in their individual and official** | ) | |
| **capacities,** | ) | |
| | ) | |
| **Defendants-Respondents.** | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Darla S. Williamson, District Judge.

Order granting motion for summary judgment, <u>affirmed</u>.

Todd A. Butters, Boise, pro se appellant.

Kirtlan G. Naylor of Naylor & Hales, P.C., Boise, for respondents.

GUTIERREZ, Judge

Todd Allan Butters appeals from the district court's grant of summary judgment in favor of the defendants-respondents ("defendants") on the basis that he did not exhaust his administrative remedies.  We affirm.

**I.**

**FACTS AND PROCEDURE**

Butters is incarcerated at the Idaho Correctional Center (ICC) under the jurisdiction of the Idaho Department of Correction (IDOC).  He claims during his incarceration, on October 5,

1

2007, he was assaulted by other inmates due to his status as a sex offender. He also claims that a second assault occurred ten days later, on October 15. On October 30, 2007, Butters submitted two separate concern forms[1] to defendants Tammy McCall and Sara Fink--both referencing only the October 5 incident. Butters also asserts that he submitted a grievance form on November 10, 2007, again complaining of the October 5 incident; however, ICC claims to have no record of the grievance and the form Butters presented to the district court is not signed or dated by an ICC staff member as having been received.

On October 1, 2008, almost a year later, Butters submitted another concern form to defendant Brent Archibald, complaining of the October 5, 2007, assault, and for the first time, mentioning the October 15 assault. Archibald responded, indicating that he did not find enough evidence to determine who participated in the assault. Six days later, Butters submitted another concern form to Archibald, reiterating the same complaints as the October 1 form. Archibald responded by referencing his earlier response.

On October 20, 2008, Butters submitted a grievance appeal form, complaining of the two October 2007 assaults and mentioning that he had filled out concern forms in both October 2007 and October 2008. He did not mention submitting a November 2007 grievance form. The ICC Grievance Coordinator, Jennifer Gardner, responded to the grievance appeal, indicating that it had no merit as it was untimely, since the alleged assaults had occurred over a year earlier. On October 22, Butters submitted a second grievance appeal form, reiterating his contentions, which was again denied as being untimely.

On April 10, 2009, Butters filed a civil action against various employees of ICC (defendants), claiming they had failed to prevent him from being harmed and had not taken action to alleviate the future risk of harm he faces as the result of his status as a sex offender.

The defendants moved for summary judgment, which the district court granted on the ground that Butters had failed to exhaust his administrative remedies before filing his civil action. Butters filed a motion to reconsider, which the court also denied. Butters now appeals the grant of the defendants' motion for summary judgment on the basis that he did not exhaust his administrative remedies.

---

[1]    As will be discussed in detail below, ICC's grievance process consists of three steps: (1) submission of a concern form, (2) submission of a grievance form, and (3) submission of a grievance appeal form.

2

## II.

## ANALYSIS

Butters contends that the district court erred in granting summary judgment in favor of the defendants, specifically asserting that the court erred in determining that he had failed to fully exhaust his administrative remedies. Defendants respond that the district court correctly determined that Butters failed to exhaust his administrative remedies prior to filing his civil action because he failed to submit a timely concern or grievance form for either the October 5 or October 15 assaults as required by ICC's grievance policy.

### A.     Summary Judgment

We first note that summary judgment under Idaho Rule of Civil Procedure 56(c) is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct. App. 1986). When assessing a motion for summary judgment, all controverted facts are to be liberally construed in favor of the nonmoving party. Furthermore, the trial court must draw all reasonable inferences in favor of the party resisting the motion. *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 517, 808 P.2d 851, 854 (1991); *Sanders v. Kuna Joint Sch. Dist.*, 125 Idaho 872, 874, 876 P.2d 154, 156 (Ct. App. 1994).

The party moving for summary judgment initially carries the burden to establish that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *Eliopulos v. Knox*, 123 Idaho 400, 404, 848 P.2d 984, 988 (Ct. App. 1992). The burden may be met by establishing the absence of evidence on an element that the nonmoving party will be required to prove at trial. *Dunnick v. Elder*, 126 Idaho 308, 311, 882 P.2d 475, 478 (Ct. App. 1994). Such an absence of evidence may be established either by an affirmative showing with the moving party's own evidence or by a review of all the nonmoving party's evidence and the contention that such proof of an element is lacking. *Heath v. Honker's Mini-Mart, Inc.*, 134 Idaho 711, 712, 8 P.3d 1254, 1255 (Ct. App. 2000). Once such an absence of evidence has been established, the burden then shifts to the party opposing the motion to show, via further depositions, discovery responses or affidavits, that there is indeed a genuine issue for trial or to

offer a valid justification for the failure to do so under I.R.C.P. 56(f). *Sanders*, 125 Idaho at 874, 876 P.2d at 156.

The United States Supreme Court, in interpreting Federal Rule of Civil Procedure 56(c), which is identical in all relevant aspects to I.R.C.P. 56(c), stated:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citations omitted). The language and reasoning of *Celotex* has been adopted in Idaho. *Dunnick*, 126 Idaho at 312, 882 P.2d at 479.

The interpretation of a statute is an issue of law over which we exercise free review. *Corder v. Idaho Farmway, Inc.*, 133 Idaho 353, 358, 986 P.2d 1019, 1024 (Ct. App. 1999). When interpreting a statute, we will construe the statute as a whole to give effect to the legislative intent. *George W. Watkins Family v. Messenger*, 118 Idaho 537, 539-40, 797 P.2d 1385, 1387-88 (1990); *Corder*, 133 Idaho at 358, 986 P.2d at 1024. The plain meaning of a statute will prevail unless clearly expressed legislative intent is contrary or unless plain meaning leads to absurd results. *Messenger*, 118 Idaho at 540, 797 P.2d at 1388; *Corder*, 133 Idaho at 358, 986 P.2d at 1024.

The statute implicated herein states:

> Unless a petitioner who is a prisoner establishes to the satisfaction of the court that he is in imminent danger of serious physical injury, no petition for writ of habeas corpus or *any other civil action* shall be brought by any person confined in a state or county institution, or in a state, local or private correctional facility, with respect to conditions of confinement *until all available administrative remedies have been exhausted. . . .*

Idaho Code § 19-4206(1) (emphasis added).

At the time of the alleged incidents, ICC followed the same grievance procedures as IDOC. IDOC Directive No. 316.02.01.001, in effect at the time of the alleged incidents,[2] set forth a grievance process which could be utilized for complaints regarding all policies, conditions of confinement, actions by employers, actions by other inmates, and incidents occurring within the jurisdiction of ICC that affect the inmate personally.

The relevant portions of Directive No. 316.02.01.001 were as follows:

05.00.00.    PROCEDURE

The offender grievance process is a three-step process consisting of the Concern Form . . . the Grievance Form . . . , and the grievance appeal.

. . . .

05.02.01    Offender Concern Form

An offender shall try to solve an issue or problem informally by using a Concern Form before filing a grievance.

. . . Staff should respond within seven (7) working days of receiving and Offender Concern Form.

05.02.02.    Offender Grievance Form

If the issue cannot be solved informally, the offender may obtain a grievance form from the unit staff.

The grievance shall be filed within fifteen (15) days of the incident or problem that is the basis of the grievance. The reviewing authority may extend the time limit for up to sixty (60) days.

. . . .

. . . Steps taken to solve the issue shall be documented on the Offender Concern Form and attached to the grievance.

. . . .

If the grievance is correctly filled out, the grievance shall be assigned to the most applicable staff, but not the same staff who responded to the concern. . . .

. . . .

05.03.00.    Appeal Process

If the offender is not satisfied with the reviewing authority's response, the offender may appeal by returning the original (white) copy of the grievance to the grievance coordinator. The appeal must be filed within ten (10) days of the reviewing authority's response. . . .

Gardner, ICC's Grievance Coordinator, averred that upon completion of all three steps--the offender concern form, the grievance form, and the grievance appeal--the offender grievance process is considered exhausted.

---

[2]    Specifically, this directive was in effect between September 16, 2004, and November 28, 2007.

On this basis, the district court concluded that despite Butters' contention that he had complied with ICC's grievance process and had thus exhausted the administrative remedies available to him, he had not done so as:

> [t]here is no evidence that Plaintiff filed a timely grievance in regard to the October 5, 2007 assault incident. To the extent that an Offender Concern Form may constitute a grievance, Plaintiff did not file a grievance until at least October 30, 2007, twenty-five days after the alleged incident. The actual Grievance Form was not filled out until more than a month later on November 10, 2007. None of these forms, if they were filed, were timely filed based on the dates that they were signed by Plaintiff.
>    In addition, there is no evidence that Plaintiff filed a timely grievance in regard to the October 15, 2007 assault incident. The two concern forms that were signed on October 30, 2007, within fifteen days of this alleged incident, only refer to the October 5, 2007 incident and not the October 15, 2007 incident. The first time Plaintiff filed a concern form with respect to the October 15, 2007 incident was almost a year later on October 1, 2008.

(citations omitted).

Assuming that the concern forms filed by Butters could be considered the requisite grievance forms under the policy, we are faced with the issue of whether, as the district court concluded here, the fact that a plaintiff's grievance form was untimely filed constituted a failure to exhaust administrative remedies under I.C. § 19-4206(1).[3] This is a matter of first impression in Idaho.

As the defendants point out, federal law contains an exhaustion requirement similar to that found in I.C. 19-4206(1) in the Prison Litigation Reform Act of 1995 (PLRA) which states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C.A. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a).

---

[3]    By engaging in an analysis based upon filing of a grievance form, we do not hold that a concern form may be properly considered to be a grievance form. Clearly, the procedure contemplated the processing of three steps, a concern form, a grievance form and a grievance appeal form. We note, too, that while, as Butters argues, the procedure did not set an express deadline for filing a concern form, the procedure contemplated the filing and processing of a concern form in advance of the filing and processing of the grievance form, which grievance form must have been filed, under the procedures at issue in this case, within fifteen days of the incident. In fact, the concern form, indicating the steps taken to informally resolve the issue, must have been attached to the grievance form.

Thus, we turn to federal case law to assist in interpreting the exhaustion requirement of Idaho's statute. *See Curlee v. Kootenai County Fire & Rescue*, 148 Idaho 391, 396, 224 P.3d 458, 463 (2008) (noting that when confronted with matters of first impression involving Idaho statutes we may glean insight from the interpretations of sister jurisdictions concerning similar or identical statutes).

In *Woodford v. Ngo*, 548 U.S. 81, 83 (2006), the United States Supreme Court examined whether a prisoner can satisfy the PLRA's exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal. *Id.* There, a state prisoner was allegedly prohibited from participating in certain prison programs, including a variety of religious activities. Approximately six months after the restriction was imposed, the prisoner filed a prison grievance challenging that action. The grievance was rejected by prison officials as untimely because it was not filed within fifteen working days of the action being challenged.

In examining whether the filing of a procedurally defective grievance form satisfied the exhaustion requirement, the Court first noted that the purpose of the exhaustion doctrine is threefold. *Woodford*, 548 U.S. at 93. It "attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case,'" is "intended to reduce the quantity" of prisoner lawsuits, and is meant to "improve the quality of prisoner suits." *Id.*

The Supreme Court, deciding that the filing of a procedurally defective grievance did not satisfy the exhaustion requirement, stated that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. The Court therefore indicated that the prisoner's claim should be dismissed, as failure to exhaust administrative remedies must carry a sanction in order to avoid becoming a "toothless" requirement. *Id.* at 95.

We find this reasoning persuasive and conclude the exhaustion requirement under I.C. § 19-4206(1) demands that the procedural and filing deadlines of a prison's administrative remedy process be complied with. Here, Butters does not dispute the district court's conclusion that he failed to file a timely grievance form as to both the October 5 and October 15 alleged

altercations. However, he advances several arguments as to why the court should still have found that he exhausted administrative remedies as required by the statute.

Initially, Butters contends that the defendants did not respond to his filing grievance forms and therefore waived their ability to rely on the exhaustion doctrine as a defense. In granting summary judgment in favor of the defendants, the court responded to this argument, noting that the issue of whether Butters received a response to his filed grievance forms is only relevant if there was a timely grievance form filed--in other words, the defendants were not required to respond to a procedurally defective grievance form. We implied as much in *Drennon v. Idaho State Corr. Inst.*, 145 Idaho 598, 181 P.3d 524 (Ct. App. 2007), where, on appeal, the inmate plaintiff alleged that he had submitted several concern forms to prison officials as part of the administrative grievance process and then claimed that prison officials had never responded to any of his forms and therefore, he was not required to have proceeded with the exhaustion process. However, the state pointed to evidence showing that the plaintiff had not properly followed the grievance policy in submitting the necessary forms. On this basis, we concluded that because the plaintiff had not filed the proper grievance forms or appeal documentation, he had failed to show administrative exhaustion, regardless of whether prison officials had responded to the inmate's improperly filed complaints. *Id*. at 603-04, 181 P.3d at 529-30. [4]

Butters also contends that he was unable to file timely grievance forms because he was placed in administrative segregation following the alleged assaults and was not provided with the proper forms until October 30, 2007. The defendants contend this allegation is "not only contradictory with his previous statements and factually incorrect, it is also inadmissible."

As the exhaustion statute explicitly provides, a plaintiff must only exhaust *available* administrative remedies. I.C. § 19-4206(1). However, even if we were to hold that a lack of access to the correct forms could render the ICC's administrative grievance procedures unavailable to Butters, he did not produce admissible evidence to withstand summary judgment on this claim.

---

[4]     We note that in support of his argument, Butters cites several cases where courts have held that prisoners satisfied the exhaustion requirement if they did not receive a response to their grievance from prison officials. However, the cases he cites involved a lack of response to a validly filed grievance--which is distinguishable from the case here where the grievances were clearly untimely filed.

If a motion for summary judgment is supported by a particularized affidavit, the opposing party may not rest upon bare allegations or denials in his pleadings. I.R.C.P. 56(e). *See also Verbillis v. Dependable Appliance Co.*, 107 Idaho 335, 337, 689 P.2d 227, 229 (Ct. App. 1984). The nonmoving party must submit more than just conclusory assertions that an issue of material fact exists to withstand summary judgment--he must set forth, by affidavit or deposition, "specific facts" showing a genuine issue. I.R.C.P. 56(e); *Finholt v. Cresto*, 143 Idaho 894, 896-97, 155 P.3d 695, 697-98 (2007). A mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment. *Id.* at 897, 155 P.3d at 698. If a party does not so respond, summary judgment, if appropriate, shall be granted. I.R.C.P. 56(e).

Here, Butters did not raise the allegation that he was prevented from accessing the proper forms in his initial complaint or in his affidavit supporting his opposition to the defendants' summary judgment motion and accompanying affidavit. He first mentioned the allegation at a hearing on the defendants' motion for summary judgment and continues to assert it on appeal. As the defendants point out, however, this proves problematic in that a nonmoving party is not allowed to rest upon bare allegations or denials, but must set forth by affidavit specific facts showing that there is a genuine issue for trial. It is clear that the mere fact that Butters raised the issue--which consisted of merely conclusory allegations--verbally at the summary judgment hearing, is not sufficient to establish a genuine issue of material fact. *See* I.R.C.P. 56(e). *Accord Goodman v. Lothrop*, 143 Idaho 622, 627, 151 P.3d 818, 823 (2007) (holding, in response to plaintiff's argument that mediation agreement should not be enforced because it was entered under duress, that such argument was conclusory, was not supported by facts, and was insufficient to raise a genuine issue of fact precluding summary judgment); *Stafford v. Weaver*, 136 Idaho 223, 225, 31 P.3d 245, 247 (2001) (noting that plaintiff must have presented more than just conclusory allegations and a scintilla of evidence to raise a genuine issue of fact).

In *Drennon*, we addressed a somewhat similar issue where the plaintiff insisted that he had raised a genuine issue of fact as to whether he had been prevented from exhausting administrative remedies by presenting evidence that he had been threatened with retaliation if he completed the prison grievance procedures. We noted, however, that Drennon had not pointed to evidence that such was the case with regard to any claims in his amended complaint; rather he cited to averments in his amended complaint and affidavits indicating that prison officials had

9

made generalized threats toward him for filing concern forms and attempting to represent other inmates. For example, we noted, "Drennon vaguely averred in his amended complaint that a prison official told Drennon that writing concern forms would cause 'problems' for Drennon." *Drennon*, 145 Idaho at 604, 181 P.3d at 530. We concluded, however, that the averments cited by Drennon were insufficient to show that he was prevented from exhausting administrative remedies before filing the action, and therefore he did not raise a genuine issue of fact as to whether the defendants rendered the administrative grievance process unavailable to him. *Id.* Accordingly, we concluded the district court properly granted summary judgment for the defendants because there was no genuine issue of material fact as to whether Drennon exhausted the available administrative remedies prior to filing his amended complaint. *Id.*

In *Drennon*, unlike this case, the plaintiff actually referred to averments, and this Court still found that he failed to raise a genuine issue of material fact as to whether the defendants had rendered the administrative grievance process unavailable to him. Here, Butters refers only to conclusory allegations, not supported by evidence in an affidavit, which are insufficient to survive dismissal under summary judgment.

Because Butters did not file timely grievance forms with regard to either alleged assault (and thus did not properly follow the grievance appeal process), we conclude that the district court did not err in granting summary judgment in favor of the defendants on the ground that Butters did not exhaust the available administrative remedies as required by I.C. § 19-4206(1).

**B. Attorney Fees and Costs**

The defendants request attorney fees on appeal pursuant to Idaho Code § 12-121 and Idaho Appellate Rule 41. Such an award may be granted to the prevailing party if the court is left with the abiding belief that the appeal was brought or defended frivolously, unreasonably, or without foundation. *Drennon*, 145 Idaho at 604, 181 P.3d at 530. The defendants argue such is the case here because the facts definitively establish that Butters did not exhaust his administrative remedies where it is undisputed that he did not submit timely grievances for either the October 5 or the October 15 assault. The defendants contend that Butters has "failed to produce any evidence suggesting that he complied with the simple and well-established mandate set forth" in the statute, but he "continues to pursue his frivolous claims with conclusory allegations and evolving explanations."

As we indicated above, the evidence presented to the district court clearly indicated that Butters had not filed timely grievances with regard to either alleged assault. However, we also indicated that the consequence of untimeliness with regard to the exhaustion requirement of I.C. § 19-4206(1) is a matter of first impression in Idaho. In addition, Butters asserted several reasons why the court should not have concluded that he failed to exhaust administrative remedies, despite the fact that his forms were untimely, and while we ultimately concluded that none had merit, we cannot say they were pursued frivolously or unreasonably. In addition, while they may have been without merit, whether to award attorney fees is within the discretion of this Court and we exercise that discretion by not awarding attorney fees in this case. *See Drennon*, 145 Idaho at 604, 181 P.3d at 530 (exercising discretion to deny attorney fees despite the recognition that the plaintiff's arguments on appeal might be deemed frivolous, unreasonable, or without foundation).

Costs incurred in defending against this appeal, however, are awarded as a matter of course to the defendants because they are prevailing parties. *See* I.A.R. 40(a).

### III.

### CONCLUSION

The district court did not err in granting the defendants' motion for summary judgment on the basis that Butters did not exhaust his administrative remedies before filing a civil suit. Accordingly, the order of the district court granting the defendants' motion for summary judgment is affirmed. We do not award attorney fees to the defendants as the prevailing party, but do award costs.

Judge GRATTON and Judge MELANSON **CONCUR.**